## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**CBC ENGINEERS & ASSOCIATES LTD.,**

                     **Case No. 3:12-CV-00125**

             **Plaintiff,**

                     **Judge Thomas M. Rose**

**-v-**

**MILLER AVIATION, LLC, et al.**

             **Defendants**

---

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART MILLER AVIATION, LLC, et al.'s MOTION TO DISMISS (Doc. # 13)**

---

This matter arises from a plane crash that resulted in the death of David J. Cowherd, one of CBC Engineers & Associates LTD's ("CBC") founders, on March 30, 2011. Compl. ¶ 1. Plaintiffs raise three claims against Miller Aviation, LLC, et. al. ("Miller"), including breach of contract, negligence, and gross negligence.

CBC's Complaint was originally filed in the Court of Common Pleas, Montgomery County, Ohio, on March 29, 2012. It was subsequently removed to this Court based upon this Court having diversity jurisdiction.

Pending before the Court is Miller's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Doc. #13. CBC has responded to the Motion to Dismiss (doc. # 20) and Miller has replied to CBC's response (doc. # 21). The Motion to Dismiss is, therefore ripe for decision. The relevant factual allegations will first be set forth followed by an analysis of the Motion.

I.    **Relevant Factual Provisions**

In the context of a motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint. CBC's Complaint includes the following factual allegations:

CBC is a geotechnical engineering firm founded in 1995 by David Cowherd ("Cowherd") and his business partner, Al Banner. Compl. ¶ 12. Cowherd had some 30 years of experience in the geotechnical engineering business when CBC was formed. Compl. ¶ 12.

Cowherd was 46% owner of CBC and served as the company's Chief Executive Officer and Chief Engineer. Compl. ¶ 15. He held an engineering license in all 50 states, which allowed CBC's business to expand throughout the United States. Compl. ¶ 15. Because he was licensed in every state, his approval was required for the vast majority of drawings submitted for CBC projects in other states. Compl. ¶ 15.

On the afternoon of March 30, 2011, Miller operated a Cessna 310R aircraft to fly Cowherd from Dayton-Wright Brothers Airport in Dayton, Ohio, to Pike County Airport in Pikeville, Kentucky. Compl. ¶¶ 16, 17, 21. Cowherd's fare had been paid by CBC, as it had been with prior flights. Compl. ¶ 18. Miller contracted with CBC, as they had done in the past. Compl. ¶ 18. Miller knew or should have known of the fact that Cowherd was flying on business for CBC and of Cowherd's critical importance to CBC's business operations. Compl. ¶ 19. Miller had the duty to exercise the highest degree of care to provide safe transport to its passenger because it was a common carrier. Compl. ¶ 20.

The flight departed Dayton-Wright Brothers Airport at approximately 11:48 AM. Compl. ¶ 21. Cowherd was the only passenger onboard. Compl. ¶ 22. The only other person on the flight was the pilot. Compl. ¶ 22.

As the flight approached Pikeville, KY, the pilot requested and was cleared for the RNAV Runway 09 non-precision instrument approach procedure. Compl. ¶ 23. When the flight was approximately twenty miles from the Pikeville Airport, the pilot requested information from the airport regarding weather conditions. Compl. ¶ 24. An airport employee reported the current Automated Weather Observation Service weather of 1 to 1 ½ miles of visibility and 200 to 300-foot ceilings, but also told the pilot that the weather conditions that he personally observed were worse than what was reported. Compl. ¶ 24.

The pilot knew that the non-precision approach that he requested had a minimum descent altitude ("MDA") of 1,960 feet, which was 506 feet above the runway elevation and that the reported ceiling for the clouds were lower than 506 feet. Compl. ¶ 25. Thus, the pilot would not have been able to see the airport or runway without going below the MDA. Compl. ¶ 25. Despite this knowledge, the pilot recklessly continued to fly the non-precision approach while the ILS Runway 27 precision approach was available to the pilot. Compl. ¶ 25. The ILS Runway 27 approach had an MDA of 200 feet above runway elevation. Compl. ¶ 25.

The pilot had accurate reports of current weather conditions in the Pikeville area during the time the flight was to land. Compl. ¶ 26. At approximately 12:48 PM, the aircraft, while in descent, flew well below the published MDA, and impacted several treetops 1,110 feet to the right of the runway centerline, approximately 100 feet below the airport elevation. Compl. ¶ 27. The damaged aircraft came to a rest approximately 1,200 feet beyond the first tree strike and 650 feet below the airport elevation. Compl. ¶ 27.

-3-

The pilot, who could not see the ground due to the weather conditions, failed to maintain situational awareness and failed to maintain a safe altitude, descended below the minimum decision height, and crashed the aircraft into the trees. Compl. ¶ 28. Prior to the crash, the aircraft's engines were functioning properly, and post-crash examination revealed no evidence of mechanical anomaly. Compl. ¶ 29.

Toxicological testing of the pilot detected 14.24 (μg/ml, μg/g) Acetaminophen in urine and .26 (μg/ml, μg/g) Doxylamine in blood. Compl. ¶ 31. Doxylamine is marketed as NyQuil, an over-the-counter antihistamine used in the treatment of the common cold and hay fever, and Unisom, a sleep aid. Compl ¶ 31. The toxicological analysis revealed that the pilot had high levels of Doxylamine in the heart blood. Compl. ¶ 32. The pilot's ingestion of Doxylamine prior to the flight caused the pilot to be impaired and created a hazard to flight safety. Compl. ¶ 33.

## II.     Relevant Legal Provisions

### a.  Standard of Review

Under Fed. R. Civ. P. Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (U.S. 2007). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). Also, the complaint must be construed in the light most favorable to the non-moving party and its pleadings must be accepted as true. *Morgan v. Church's Fried Chicken*, 829, F. 2d 10, 12 (6th Cir. 1987).

### b.  Breach of Contract Claim

Ohio law permits an employer to recover damages in a breach-of-contract claim against a third-party for injuries sustained its employee. *Cincinnati Bell Telephone Co. v. Straley*, 533

N.E.2d 764, 772 (Ohio 1988). "Where a third party negligently injures an employer's employee and such injury is a direct result of a breach of contract which the third party had with the employee's employer, and as a direct result of such breach the employer suffers damages, such damages are recoverable against the third party in an action for breach of contract." *Id*. The essential element to recovery by an employer from a third party for an employee's injuries is the existence of a contract. *Midvale Coal Co. v. Cardox Corp*., 89 N.E.2d 673 (Ohio 1949). The contract can be express or implied. *Appleton Papers, Inc. v. Allis-Chalmers*, No. CA-11866, 1990 WL 78585, at *3 (Ohio Ct. App. June 8, 1990). The existence of a contract creates a duty to not cause harm to the plaintiff's employee. *Id.*

### c. Negligence Claim

Ohio law recognizes the common law doctrine of negligence. Actionable negligence rests on the concept of duty. *Cincinnati Bell*, 533 N.E.2d at 770. In order for one to recover damages, another party must have owed them a duty, and the other party must have breached that duty. *Id*. Where a common carrier is involved, the highest duty of care is required. *Johnson v. Cravens*, 476 N.E.2d 1073, 1075 (Ohio Ct. App. 1984).

In the context of employer/employee relationships, employers cannot recover in negligence actions when their employees have been injured. *Cincinnatti Bell*, 533 N.E.2d at 770. "The third party ha[s] a duty to the employee not to negligently injure him but that duty [is] not owed to the employer." *Id*. at 771. In a situation where plaintiff's employee had only been injured through negligence of the third party, where the third party owed no duty to the plaintiff, no damages are owed to the plaintiff-employer. *Cincinnati Bell*, 533 N.E.2d at 771; *SSD Distribution System, Inc. v. General Motors Corp*. 539 N.E.2d 1121, 1122 (Ohio 1989).

### d. Gross Negligence Claim

The Ohio Supreme Court has defined gross negligence in a number of ways. It has been defined as the "failure to exercise any or very slight care." *Johnson v. State*, 63 N.E. 607, 609 (Ohio 1902). It has also been defined as a "failure to exercise even that care which a careless person would use." *Thompson Elec. V. Bank One, Akron, N.A.*, 525 N.E.2d 761 (Ohio 1988).  To establish gross negligence, all elements of negligence must exist. *See Johnson*, 63 N.E. at 609.

### e. Wrongful-Death Claim

Ohio's wrongful-death statute is evoked when the death of a person is "caused by wrongful act, neglect, or default which would have entitled *the party injured* to maintain an action and recover damages if death had not ensued…" Ohio Rev. Code § 2125.01 (emphasis added). The Code further provides that an action for wrongful death shall be brought in name of the "personal representative of the decedent for the *exclusive benefit* of the surviving spouse, the children, and parents of the decedent…" Ohio Rev. Code §2125.02 (emphasis added). A wrongful-death action in Ohio has three elements: (1) the existence of a duty owed to the plaintiff's decedent; (2) a breach of that duty; (3) proximate causation linking the breach of the duty to the decedent's death. *Johnson v. Miller*, No. 2:11-CV-00067, 2011 WL 3793497 at *7 (S.D. Ohio Aug. 25, 2011).

## III. Analysis

### a. Breach of Contract Claim

In this case, Miller allegedly contracted with CBC for the flight on March 30, 2011, just as they had many times previously. Compl. ¶ 18. CBC alleges that Miller has or did have an express contract between the parties in their possession. Compl. ¶ 38. Even if that is not the case,

-6-

CBC's alleged payment of David Cowherd's fare creates an implied contract between CBC and Miller. Compl. ¶ 18.

The flight on March 30, 2011, was a routine matter for all parties involved—Miller, CBC, and David Cowherd. Miller had flown Cowherd for CBC business many times, with many, if not all of his fares being covered by CBC. Compl. ¶¶ 1, 18. Because a contract allegedly existed between CBC and Miller, Miller owed CBC a contractual duty. Compl. ¶ 18. The contractual duty was to get Cowherd from Dayton, OH to Pikeville, KY safely. Compl. ¶ 17. When the plane crashed in Pikeville, KY, Miller breached its alleged duty to CBC. Compl. ¶¶ 27-29. David Cowherd was allegedly negligently injured in the plane crash, and the injury was a direct result of the alleged breach of contract between CBC and Miller.

As a direct result of Miller's alleged breach of contract, CBC suffered damages. CBC's damages are recoverable against Miller in a breach-of-contract action.

### b. Negligence Claim

In this case, Miller did not owe a duty of care to CBC. Miller did, however, owe David Cowherd the highest duty of care due to their position as a common carrier. Compl. ¶ 20. While it may be true that Miller acted negligently toward Cowherd, by breaching their duty to provide safe, reliable, and dependable carriage from Dayton, OH to Pikeville, KY, the same is not true regarding Miller's duty to CBC.

The duty of care was only owed to Cowherd. As a common carrier, Miller owed the highest duty of care to Cowherd to get him from Dayton, OH to Pikeville, KY safely. Compl. ¶ 17. When the plane crashed, Miller allegedly breached its duty to Cowherd, thus resulting in negligence to Cowherd. Compl. ¶¶27-29.

However, Miller did not owe that same duty to CBC. Cowherd was an employee of CBC. CBC cannot recover in a negligence action because Cowherd was injured. Because Miller did not owe CBC a duty of care, there can be no action for negligence.

### c. Gross Negligence Claim

Miller did not owe a duty of care to CBC, but rather allegedly owed a duty of care to Cowherd, their passenger. Compl. ¶ 20. As stated above, without a duty care, negligence cannot be established. Because negligence cannot be established, gross negligence cannot be established.

### d. Wrongful-Death Claim

Here, CBC does not raise a wrongful-death claim in their complaint. The complaint clearly raises three separate counts: (1) Breach of Contract; (2) Negligence; and (3) Gross Negligence. Compl. ¶¶ 37-50. As Cowherd's employer, CBC is not in a position to bring a wrongful-death claim, as wrongful death claims are reserved for sole benefit of the decedent's family. CBC has not been appointed the personal representative of Cowherd's estate, and is therefore legally prohibited from bringing a wrongful-death claim.

## IV.    CONCLUSION

This Court must construe the facts in the most favorable light to CBC, the non-moving party. Based upon CBC's Complaint, Miller contracted with CBC for the flight on March 30, 2011, David Cowherd was injured in the plane crash, and the injury was the direct result of an alleged breach of contract between CBC and Miller. Compl. ¶¶ 1, 18, 27-29. As a direct result of Miller's alleged breach of contract, CBC suffered damages. Compl. ¶¶ 37-42. CBC's damages are recoverable against Miller in a breach-of-contract action. Therefore the Motion to Dismiss for failure to state a claim in a breach-of-contract action must be DENIED.

Based upon CBC's complaint, CBC alleges that, as a common carrier, owner, and operator of the flight, Miller owed CBC a duty of care to provide Cowherd a safe flight. Compl. ¶ 20. While it is alleged that Miller acted negligently toward Cowherd by breaching their duty to provide safe, reliable, and dependable carriage from Dayton, OH to Pikeville, KY, the same cannot be said regarding Miller's duty to CBC. Compl. ¶¶ 27-29. Miller did not owe CBC the same duty of care it owed Cowherd. The duty of care was only owed to Cowherd. Because Miller did not owe CBC a duty of care, there can be no action for negligence. Therefore, the Motion to Dismiss for failure to state a claim for negligence is GRANTED.

Based upon CBC's complaint, CBC alleges that, as a common carrier, owner, and operator of the flight, Miller owed CBC the highest duty of care in transporting Cowherd, and thus brought an action for gross negligence. Compl. ¶ 20. Because Miller owed CBC *no* duty of care, it is impossible for them to have owed CBC the *highest* duty of care. There can be no action for gross negligence. Therefore, the Motion to Dismiss for failure to state a claim for gross negligence is GRANTED.

Based upon CBC's complaint, there is no mention of a wrongful-death claim in any of the three counts. Compl. ¶¶ 37-50. It is clear that CBC is aware that they are not entitled to bring a wrongful-death claim, as they are personal representative to decedent's estate, and are not entitled to relief through this cause of action. Plaintiff's complaint is not a wrongful-death action.

Miller's Motion to Dismiss (Doc. #13) is GRANTED IN PART and OVERRULED IN PART. CBC's Negligence and Gross Negligence claims are DISMISSED. CBC's Breach-of-Contract claim remains to be adjudicated.[1]

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Emelia J. Hanson in drafting this opinion.

**DONE** and **ORDERED** in Dayton, Ohio this Twenty-Seventh Day of July, 2012

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record